UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

RICHARD P. SHERIDAN,

                    Plaintiff,

v.

MICHAEL J. ASTRUE,

                    Defendant.

Case No. 3:09-CV-135-CWD

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Currently pending before the Court for its consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Richard P. Sheridan ("Petitioner") March 28, 2009.  The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on September 10, 2003, alleging disability based on back, shoulder, and knee problems. This application was denied initially and on reconsideration, and a

hearing was held on February 3, 2004. The Administrative Law Judge ("ALJ") issued a decision finding Petitioner not disabled on March 20, 2006 and Petitioner timely requested review by the Appeals Council, which denied his request for review o July 24, 2006.  The Petitioner appealed to the United States District Court for the District of Idaho (CV 06-374-C-LMB) and the court remanded the case on March 19, 2007. The Appeals Council remanded the case to the ALJ for a new hearing.

While this appeal was pending, Petitioner filed a second application for disability benefits on August 8, 2006.  The claim was denied initially on December 8, 2006, and upon reconsideration on June 21, 2007. This claim was associated with the original claim and ALJ Hayward Reed held a hearing on June 5, 2008, taking testimony from Dr. Malcolm Brahms, an orthopedic medical specialist, Mr. William Wright, a vocational expert, and Petitioner.  Another hearing was held on June 26, 2008 and the ALJ took testimony from Dr. Marian Martin, a psychologist, Mr. Daniel R. McKinney, another vocational expert, and Petitioner.  ALJ Hayward issued a decision on both claims finding Petitioner not disabled on August 25, 2008.  The Appeals Council denied review of the opinion based upon Petitioner's failure to timely file the appeal, making the ALJ's decision the final decision of the Commissioner.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the last hearing, Petitioner was 49 years of age. Petitioner has a tenth grade education but completed his GED in 1983. Petitioner's prior work experience includes team cleaner, operation manager, vending machine supplier and driver, and long

haul driver.

## DISCUSSION

### 1. Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of November 20, 2002. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disk disease of the lumbar spine, right shoulder injury, left ankle injury, somatoform disorder, and prescription medication abuse severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments, including substance abuse, did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was unable to perform his past relevant work as a team cleaner, operation manager, vending machine supplier and driver, or long haul driver. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. When the ALJ considered the Petitioner's RFC, including the effects of Petitioner's prescription medication abuse, the ALJ found that Petitioner did retain the residual functional capacity to perform sedentary work[1] but that there were no jobs that exist in significant numbers in the national economy that the claimant could perform.

However, pursuant to 20 C.F.R. § 404.1535, the ALJ next proceeded to determine if Petitioner would still be disabled without the impact of the prescription medication abuse. Under 20 C.F.R. § 404.1535, if a petitioner is found to be disabled and there is medical evidence of a substance abuse disorder, the ALJ must determine if the substance abuse disorder is a contributing factor material to the determination of disability. In making that determination, the ALJ must evaluate the extent to which the petitioner's

---

[1] Specifically, the ALJ held that Petitioner, including his prescription medication abuse can lift or carry 10 pounds occasionally, and can frequently lift or carry small articles. The Petitioner can sit for six hours out of an eight hour workday, and can stand or walk two hours out of an eight hour workday. He should periodically alternate between sitting and standing to alleviate discomfort. The Petitioner has good use of his arms for repetitive hand and finger actions. He can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He can frequently balance and occasionally stoop, kneel, crouch, and crawl. He should avoid hazards such as machinery and heights. He could not understand, remember and carry out detailed instructions. He would not be able to maintain attention and concentration for extended periods. Petitioner may not be relied upon to perform activities within a scheduling, maintain regular attendance, and be punctual within customary tolerances. He would work best alone. The Petitioner's prescription medication abuse would prevent him from completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.

mental and physical limitations would remain if the petitioner stopped the substance

abuse.  If the remaining limitations are not disabling, the substance abuse is a contributing

factor to disability and the petitioner is not disabled.  *See Parra v. Astrue,* 481 F.3d 742

(9th Cir. 2007).

Taking the prescription medication abuse out of the analysis, the ALJ found that

Petitioner would continue to have the following severe impairments: degenerative disk

disease of the lumbar spine, right shoulder injury, left knee injury, left ankle injury, and

somatoform disorder.  At step three, the ALJ found that these impairments did not meet or

equal a listed impairment.   At steps four and five, the ALJ found that if the Petitioner

stopped the substance abuse, he would have the residual functional capacity to perform

sedentary work[2] and that a significant number of jobs exist in the national economy that

Petitioner could perform including those of assembler, production inspector/checker and

hand packer /packager.

**2. Standard of Review**

The Petitioner bears the burden of showing that disability benefits are proper

because of the inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be

---

[2] The ALJ found that if the Petitioner stopped abusing prescription medications, he
would have the RFC to perform sedentary work in accordance with his earlier findings
but that the mental limitations would be greatly diminished.  However, the ALJ did find
that Petitioner should not be placed in a high stress job involving the need to exercise alot
of discretion, should only have occasional contact with the public and should not be asked
to perform complex or detailed instructions.

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921

(9th Cir. 1971).  An individual will be determined to be disabled only if her physical or

mental impairments are of such severity that she not only cannot do her previous work but

is unable, considering her age, education, and work experience, to engage in any other

kind of substantial gainful work which exists in the national economy.  42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error.  42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than

a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

mean a large or considerable amount of evidence."  Pierce v. Underwood, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist which supports the

petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44

F.3d 1453, 1457 (9th Cir. 1995).  Thus, findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). See also, *Carter v. Astrue*, 295 Fed. Appx. 868, 870 (9th Cir. 2008). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993)

## ANALYSIS

Petitioner contends the ALJ erred in his determination that Petitioner had the residual functional capacity to perform a range of unskilled sedentary jobs. Specifically, Petitioner argues that the ALJ failed to properly credit the opinion of Petitioner's treating physician, the treating nurse practitioner, the opinion of the examining psychologist, and the medical expert at the hearing. Petitioner also contends that the ALJ failed to properly evaluate his credibility and failed to offer a complete hypothetical question to the

vocational expert. The Court will address each argument in turn.

**1. Physicians' opinions**

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support

the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart,* 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to Petitioner's work-related abilities or limitations are persuasive evidence of a claimant's disability due to pain and inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, the ALJ must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**a. John H. Grauke, M.D.**

Dr. Grauke was Petitioner's treating physician beginning August 27, 2003 through at least May 26, 2005.  In March 2005, Dr. Grauke completed a checkbox questionnaire form for Petitioner's disability insurance company regarding Petitioner's functional capabilities. Dr. Grauke indicated on the form that Petitioner could not work full time and that he would be absent more than three times a month as a result of his impairments or treatment.  (AR 285-286.) The ALJ discredited this opinion, finding that it was unsupported by the record as a whole because no other treating or examining doctor opined that Petitioner would be unable to work, except for Nurse Schorzman whose opinion the ALJ also found not credible.  Further, the ALJ noted that Dr. Grauke's opinion might have been based on Petitioner's ability to work while he was still abusing his pain medications.

The ALJ discredited Dr. Grauke's opinion because Dr. Grauke's ultimate finding of disability was contrary to the majority of other professional opinions included in the record.  Petitioner argues this conclusion was incorrect, contending that Dr. Grauke's opinion is consistent with the two other doctors who were asked whether Petitioner could sustain full time work, Nurse Schorzman and Todd Bledsoe.   However, the Court finds that the ALJ's conclusion was supported by substantial evidence.  As noted by the ALJ, there were numerous medical opinions provided after the alleged onset of disability that found Petitioner to not be disabled.  Beginning in 2003, after completing a two day functional capacity examination, Dr. Larry Ohman opined that Petitioner could perform

sedentary to light work. (AR 137-143.) Also, Petitioner's neurosurgeon, Dr. Donald Soloniuk opined in November 2003 that Petitioner could perform sedentary work eight months after his back surgery. (AR 205.) In 2006, Dr. Stevens, completing a RFC for the State Insurance Fund, determined the Petitioner could perform medium level work. (AR 272-275.) Dr. Bret A. Dirks, another treating physician of Petitioner, released Petitioner for light duty in May 2004. (AR 300.) Finally, during the hearing in 2008, Dr. Malcolm Brahms testified, after reviewing the entire record, that Petitioner could work but would be limited to sedentary work until he could have surgery performed on his lumbar spine. (AR 945.) Based on the sheer number of opinions contrary to Dr. Grauke's opinion, the Court finds the ALJ did not err in assigning little weight to the contested opinion of Dr. Grauke. As previously noted, if the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson*, 359 F.3d at 1195.

Petitioner also contends that, if the ALJ had a question regarding whether Dr. Grauke's opinion was based on Petitioner's drug use, the ALJ had a duty to ask Dr. Grauke whether his RFC assessment was based on his drug dependence. As noted by the Ninth Circuit, "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir.2001) *quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996). However, the ALJ is required to recontact a doctor "only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the

Court finds that the ALJ properly discredited Dr. Grauke's opinion based on its inconsistency with several other reliable reports in the record. Therefore, the ALJ had no duty to recontact Dr. Grauke regarding the impact Petitioner's substance abuse had on his decision.

However, the Court notes that the ALJ's assumption that Dr. Grauke's disability determination was based, at least partially, on Petitioner's prescription medication abuse was reasonable and based on substantial evidence. Dr. Grauke's treatment notes contain numerous references to Petitioner's inappropriate drug use and drug seeking behaviors. (AR 321, 326, 329, 330, 333, 345, 347.) Further, the questionnaire completed by Dr. Grauke did not instruct him to disregard the substance abuse. There is no basis to conclude that, in evaluating Petitioner's condition, Dr. Grauke would have attempted to complete the questionnaire only after attempting to determine which of Petitioner's limitations were related only to his physical condition and which were related to his prescription medication abuse. Therefore, the ALJ's assumption that Dr. Grauke's opinion was based to some extent on Petitioner's inappropriate drug use and drug seeking behaviors was reasonable and appropriate. [3]

### b. Sandra Schorzman, ANRP

Sandra Schorzman is Petitioner's treating nurse practioner. Nurse Schorzman indicated that Petitioner could perform sedentary work for four hours of an eight hour

---

[3] This conclusion is bolstered by the fact that Dr. Grauke discontinued his treatment of Petitioner based upon Petitioner's repeated violations of their pain contract and drug seeking behaviors.

work day.  She also stated that she believed Petitioner would need a break every 30 to 60 minutes or at least be able to adjust or alternate activity to accommodate for pain. (AR 622-631.)

The ALJ, noting that Ms. Schorzman is not a doctor, gave little weight to her opinion.  Specifically, the ALJ found that Ms. Schorzman's eight pages of treatment notes which contain mostly subjective complaints and no evidence of difficulties walking, standing, or sitting did not support her opinion. It is within the ALJ's discretion to reject the opinions of nurse practitioners, who are considered "other sources, not acceptable medical sources." *De Herrera v. Astrue*, No. 08-17554, 2010 WL 1252633 (citing 20 C.F.R. §404.1513(d)(1), 1513(a)). However, the ALJ must give specific and legitimate reasons for rejecting the opinion of Ms. Schorzman.  *Joly v. Astrue*, 357 Fed. Appx. 937, 939 (9th Cir. 2009).

Petitioner argues that the ALJ's reasons for discrediting Nurse Schorzman's opinion are insufficient.  Specifically, Petitioner points out that there are a significant number of notes from Nurse Schorzman in the record. Further, Petitioner notes that Nurse Schorzman referred the Petitioner to various specialists including a pain clinic and an orthopaedic doctor while obtaining objective evidence including an MRI.

The Court agrees that there are sufficient notes in the record to form the basis of Nurse Schorzman's opinion.  However, because her opinion conflicted with the opinions of several other doctors in the record, as described more fully above with respect to the ALJ's discounting of the opinion of Dr. Grauke, the ALJ did not err in not giving Nurse

MEMORANDUM DECISION AND ORDER - 13

Schorzman's opinion greater weight. Further, as discussed below, the ALJ provided substantial evidence to discredit Petitioner's testimony as conflicting with reports of his daily activities. Therefore, discrediting Nurse Schorzman's opinion because it relied on Petitioner's self reporting was not error. *Tommasetti*, 533 F.3d at 1041. Finally, the Court notes that even Nurse Schorzman recognized the potential that Petitioner's chronic complaints and frequent injuries may have been related to inattention caused by narcotic use indicating that her RFC analysis concluding Petitioner could work four hours in an eight hour workday included consideration of Petitioner's limitations related to his prescription medication abuse. (AR 629-630.)

### c. Tim Rehnberg Ph.D.

Dr. Rehnberg evaluated Petitioner in February of 2008 at the request of Petitioner's attorney. (AR 693-701.) Dr. Rehnberg reviewed Petitioner's medical records and performed several tests including the Personality Assessment Inventory (PAI), a Structured Inventory of Malingered Symptomology (SIMS), Woodcock-Johnson Psychoeducational Test Battery (WJ-III); Rey Memory Test, and Stroop Color Word Test. According to Dr. Rehnberg's report, the PAI indicated that Petitioner was not malingering with regard to his psychological difficulties. (AR 696.) The SIMS, which is a self report instrument that measures reported symptoms however, indicated that Petitioner may have been malingering. (AR 697.) The Cognitive Ability assessment indicated that Petitioner had reduced overall cognitive efficiency. (AR 699.) Finally, the Cognitive Malingering Assessment/Rey Memory Test was performed to examine the

possibility that Petitioner was malingering in terms of his reduced cognitive efficiency and memory problems. His score demonstrated a low probability of malingering. (AR 699.) Based on the results of these tests and his examination, Dr. Rehnberg diagnosed Petitioner with undifferentiated somatoform disorder, a pain disorder associated with psychological factors and a general medical condition, adjustment disorder with mixed anxiety and depression, and opiod abuse in sustained partial remission. (AR 700.) Dr. Rehnberg gave Petitioner a GAF score of 50, noting suicidal ideation and further noting that Petitioner's highest GAF score was 55. (AR 700.)

Dr. Rehnberg also completed a Mental Residual Functional Capacity Assessment ("MRFCA") finding that, with regard to employment, Petitioner would have marked limitations in understanding and remembering detailed instructions, maintaining attention, concentration for extended periods, and completing a normal work-day work week without interruption from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods. (AR 702-704.) This MRFCA did not instruct Dr. Rehnberg to disregard any impairment caused by drug and/or alcohol abuse. Dr. Rehnberg also answered questions from Petitioner's counsel asking him to disregard any impairment caused by drug and/or alcohol abuse. In response, Dr. Rehnberg opined that Petitioner would have marked restrictions on activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; and four or more episodes of decompensation each of extended

duration. (AR 707-708. )

The ALJ gave Dr. Rehnberg's opinion little weight for the following reasons: it was elicited and paid for by Petitioner's counsel; Dr. Rehnberg's own observations suggested malingering and he did not reconcile the mixed results regarding the question of malingering on the SIMS, Rey and PAI tests; and, Dr. Rehnberg did not indicate the amount of consideration he gave to Petitioner's opiod abuse on the claimant's ability to function. Although the Court finds the first two reasons insufficient to discredit Dr. Rehnberg's report, the Court concludes that the third reason is supported by substantial evidence and a sufficient basis for giving Dr. Rehnberg's opinion little weight.

As noted above, the ALJ discredited Dr. Rehnberg's report because it was elicited and paid for by Petitioner's counsel. Petitioner argues this was an unacceptable reason for discrediting Dr. Rehnberg's opinion and the Respondent agrees. (Response p.14-15, Docket No. 9.) Therefore, the Court need not address this issue further.

The ALJ also discredited Dr. Rehnberg's report because Dr. Rehnberg's own observations suggested malingering and he did not reconcile the mixed results regarding the question of malingering on the SIMS, Rey and PAI tests. The Court finds this conclusion was not supported by substantial evidence. Dr. Rehnberg acknowledged the mixed results of the tests but found that Petitioner was not malingering. Dr. Rehnberg found that, "even though Mr. Sheridan may not be malingering with regard to his symptoms, he does display an exaggerated awareness and description of his difficulties at a level that is inconsistent with the medical record, which in itself, has diagnostic

implications." Dr. Rehnberg incorporated those diagnostic implications in his conclusion

that Petitioner had  Undifferentiated Somatoform Disorder, a criteria of which was that

Petitioner's symptoms were not intentionally produced or feigned. (AR 700.)  The ALJ

cannot substitute his interpretation of the test results for that of Dr. Rehnberg.

Despite the foregoing,  the ALJ properly discredited Dr. Rehnberg's report

because Dr. Rehnberg did not indicate the amount of consideration he gave to Petitioner's

prescription medication abuse upon the claimant's ability to function.  Petitioner argues

and Respondent agrees that the second questionnaire completed by Dr. Rehnberg directed

him to disregard any impairment caused by drug or alcohol abuse.  However, the first

questionnaire did not include a similar instruction.  Despite these different instructions,

Dr. Rehnberg's responses to the two questionnaires were almost identical.  The Court

finds this consistency significant, because Dr. Rehnberg determined that Petitioner was

only in sustained partial remission with respect to his prescription medication abuse,

indicating that he was continuing to struggle with certain aspects of his addiction to pain

medication.[4]

Further, the Court finds that the record does not support Dr. Rehnberg's

conclusions with respect to the severity of Petitioner's mental limitations.  First, there is

---

[4] Respondent also argues that the questionnaire completed by Dr. Rehnberg only
applies only to the paragraph B criteria of the adult mental disorders and these categories
are too broad to address residual functional capacity. (Respondent's Brief p. 9, Docket
No. 9). However, the Court will not address this argument because it was not raised
initially by the ALJ. The Court's review is "constrained to the reasons the ALJ asserts."
*Connett v. Barnhart*, 340 F.3d 871, 874 (9 th Cir. 2003) (internal citations omitted).

no evidence in the record to support Dr. Rehnberg's conclusion on the second questionnaire that Petitioner had four or more episodes of decompensation. There is no indication in the record that Petitioner mentally decompensated at any time over the duration of treatment for his back pain.  Instead, as noted by the ALJ, there are very few treatment notes or medical records indicating that Petitioner had any medically determinable mental health impairment or that he sought treatment for any mental health impairment except for occasional episodic depression and anxiety.  Instead, the Psychiatric Review Technique form from December 2006 indicates that Petitioner had no medically determinable mental health impairment. (AR 535.)  Further, the testimony provided by Dr. Martin at the hearing also indicates that Petitioner's limitations were not as severe as those found by Dr. Rehnberg.

Based on the foregoing, the Court finds that the ALJ's application of little weight to Dr. Rehberg's opinion was supported by substantial evidence.

### d. Marian Martin, Ph.D.

The ALJ asked Dr. Martin to assess Petitioner's mental RFC using the same numbered items used by Dr. Rehnberg in his questionnaire. (AR 1007.)  Dr. Martin identified moderate limitations without taking opiod abuse into consideration in the following abilities: understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; working in coordination with or proximity to others without being distracted

by them; completing a normal workday or workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. ( AR 1008-11.)  Dr. Martin testified that these limitations would translate into specific workplace restrictions as follows: Petitioner would need a situation that is routine, repetitive, not high stress, not a lot of deadlines, not a lot of pressure, with some limited contact with the general public and with no complex or detailed instructions. (AR 1012-13.)

The ALJ gave great weight to Dr. Martin's narrative RFC evaluations but gave little weight to Dr. Martin's initial statement that Petitioner would have moderate limitations in the categories listed above. Petitioner contends that this was error based on the internal inconsistency of Dr. Martin's analysis.  However, the Court finds the ALJ properly considered the narrative RFC provided by Dr. Martin as her actual RFC assessment.  The ALJ cites to and quotes the Social Security Program Operations Manual ("POMS") DI 24510.060 in support of his analysis. *Available at*: http://policynet.ba.ssa.gov/poms.nsf/lnx/0424510060.  The POMS is an internal agency manual and does not have the effect of law.   However, the Supreme Court of the United States has held that the Agency's expertise in internal manuals should be given deference. Washington State Dept of Social and Health Services v. Guardianship Estate of Kefeller, 537 U.S. 371, 385 (2003); Warre v. Barnhart, 439 F.3d 1001, 1005 (9 th Cir. 2006).

POMS DI 24510.060 directs the analysis of MRFCA evaluations and indicates that

**MEMORANDUM DECISION AND ORDER - 19**

a narrative RFC evaluation explaining how the ratings provided on the worksheet translate into work related mental limitations is the "actual mental RFC assessment." The ratings on the worksheet are only an aid and do not "constitute the RFC assessment." Therefore, the Court finds that the ALJ did not err by considering Dr. Martin's narrative RFC evaluation explaining how her moderate ratings would translate into mental workplace limitations.

## 2. Petitioner's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported

by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin*., 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Although the ALJ found that Petitioners' medically determinable impairments could produce Petitioner's alleged symptoms, the ALJ found that Petitioner's statements concerning the intensity, persistence and limiting effects of his symptoms associated with his severe impairments were not entirely credible. In support of this determination, the ALJ found that Petitioner's allegations were inconsistent with Petitioner's activities, objective medical evidence did not fully support the complaints, and that Petitioner

exaggerated his symptoms. (AR 462.)

The ALJ may discredit a Petitioners's subjective complaints by identifying inconsistencies or contradictions between his statements and activities of daily living. *Thomas*, 278 F3d at 958-8.  The Court finds that the ALJ's conclusion that Petitioner's daily activities contradict the extent of Plaintiff's limitations is supported by substantial evidence in the record.  Petitioner testified at the September 2005 hearing that he was able to prepare his own meals, but could not take out the trash or wash dishes.  He further testified that a little boy visited him every morning to help him put on his socks and shoes.  At the June 2008, hearing Petitioner testified that he needed help with household chores but was able to grocery shop two times a week if he was not hurting.  (AR 462.) The ALJ found that these claims were not supported by the record, noting that there was no evidence or recommendation that Petitioner needs help dressing.  Additionally, the ALJ pointed to multiple reports in the record where the Petitioner had been able to fish, have barbeques and fish fries, and even work as a DJ in 2007.  (AR 362, 605, 617, 715-16.)  Petitioner also admitted in 2007 he could walk up and down the stairs to the local radio station without too much difficulty. (AR 715-716.)

Petitioner did not specifically contest that these records contradict Petitioner's testimony with respect to his limitations, instead, Petitioner argues that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th cir. 1998) *citing Cooper v. Bowen* (noting that a disability claimant need not "vegetate in a dark room" in order to be

deemed eligible for benefits), *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) (Many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") However, in the instant case the ALJ did not err by determining that Petitioner's daily activities demonstrated he was capable of performing tasks that could translate into work related functions. For example, the ALJ found that Petitioner's ability to fish demonstrated he can sit while using his arms and hands, having fish fries and barbeques indicated he can lift and carry items as well as stand for periods of time, and walking up the stairs to work indicated he was capable of climbing ramps and stairs. Further, Petitioner admitted that when he is off the prescription pain medication he generally did not do that badly and could get by with ibprofen. (AR 574.)

Petitioner argues that the ALJ failed to take into account the variable nature of Petitioner's pain, but Petitioner's own testimony contradicts this argument. He testified at the hearing in 2005 that, although his pain worsened with activity, he lived with it 24 hours a day. (AR 380-381.) Therefore, the fact that he could participate in daily activities such as the ones described above was a sufficient basis to discredit Petitioner's testimony.

The ALJ also based his credibility determination on reports that Petitioner exaggerated his symptoms. There are several reports in the record indicating that Petitioner exaggerated his symptoms and had secondary gain issues. Nonetheless, these reports were considered by Dr. Rehnberg in his determination that Petitioner had undifferentiated somatoform disorder and pain disorder with psychological symptoms.

(AR 694.)  Therefore, the Court finds that the ALJ's reasoning with respect to Petitioner's credibility based on exaggerated reports is less persuasive that the ALJ's other bases for discrediting Petitioner's testimony.  However, even with reports of the exaggerated symptoms and a diagnosis of undifferentiated somatoform disorder and pain disorder with psychological symptoms, the fact that Petitioner was able to participate in the daily activites described above indicates that even Petitioner's exaggerated pain pursuant to his somatoform disorder did not preclude him from participating in certain daily activities.

**3. Hypothetical to vocational expert**

At step five, the ALJ may propose a hypothetical question to a vocational expert that is based on this medical assumptions supported by substantial evidence in the record that reflect the claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).  The ALJ is required to include only those limitations he finds credible in his hypothetical question.  *Magllanes,* 881 F.2d at 756-57.

Petitioner argues that the ALJ erred when presenting his hypothetical question to the vocational expert because he did not include the moderate limitations in Petitioner's ability to maintain concentration, persistence, and pace as identified by Dr. Martin. However, because the Court finds that the ALJ did not err by adopting Dr. Martin's narrative RFC assessment, the Court concludes that the ALJ did not err with respect to the hypothetical presented to the vocational expert.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the

conclusion of the ALJ that Petitioner is not disabled. The decision of the Commissioner is affirmed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Petitioner's Petition for Review (Dkt. 1) is **DISMISSED;**

2) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED.**

DATED: September 30, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge